**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CLEAN AIR COUNCIL, et al., | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civ. No. 17-4977 |
| | : | |
| UNITED STATES OF AMERICA, et al., | : | |
| Defendants. | : | |

Diamond, J.                    <u>MEMORANDUM</u>                    February 19, 2019

The Clean Air Council and two minors ask me to declare that the United States of America, the President, the Secretaries of Energy and the Interior as well as the Departments themselves, and the Environmental Protection Agency and its Administrator have violated and will violate Plaintiffs' rights by considering amendments to environmental laws, by "rolling back" environmental regulations, and by making related personnel and budget changes. (Doc. Nos. 1, 16.) Plaintiffs thus effectively ask me to supervise any actions the President and his appointees take that might touch on "the environment." (<u>Id.</u>) Defendants have moved to dismiss. (Doc. Nos. 18, 31.) Because I have neither the authority nor the inclination to assume control of the Executive Branch, I will grant Defendants' Motion. (<u>Id.</u>)

## I.    PROCEDURAL HISTORY

Plaintiffs proceed under both the federal question doctrine and the Declaratory Judgment Act. 28 U.S.C. §§ 1331, 2201, 2202. In their lengthy, two count Amended Complaint, Plaintiffs ask me to "[d]eclare that Defendants cannot effectuate or promulgate any rollbacks that increase the frequency and/or intensity of the life-threatening effects of climate change based on junk science in violation of Plaintiffs' . . . rights" under the due process clause and "the public trust doctrine." (Am. Compl. 64, Doc. No. 16.) Plaintiffs allege that any scholarship suggesting that climate change has not occurred is necessarily "junk science." (<u>See, e.g., id.</u> at ¶¶ 33, 55, 56; Pls.'

Resp. 2–3, Doc. No. 28.)

Defendants have moved to dismiss, arguing, *inter alia*, that I lack jurisdiction and that Plaintiffs have failed to state a claim.  (Doc. No. 18); Fed. R. Civ. P. 12(b)(1), (6).  At Defendants' request, I have stayed discovery pending resolution of their dismissal Motion.  (Doc. No. 25.)  The matter has been extensively briefed.  (Doc. Nos. 28, 31, 34, 35, 38, 39, 40, 41.)

## II.    LEGAL STANDARDS

I will conduct a two-part analysis.  Fowler v. PMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  First, I must accept Plaintiffs' factual allegations, and disregard legal conclusions or boilerplate recitations of claim elements.  Id.  I must then determine whether the facts alleged make out a "plausible" claim for relief.  Id.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Defendants must thus show that Plaintiffs have failed to allege facts sufficient to "raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).

## III.    ALLEGATIONS

### A.    The Plaintiffs

Although the Amended Complaint is almost 200 paragraphs long, only three paragraphs (one page) include a description of Plaintiffs or the harms they have suffered.  (Am. Compl. ¶¶ 8–10.)  Plaintiff Clean Air Council "is a member-supported environmental organization" based in Philadelphia "dedicated to protecting and defending everyone's right to breath clean air" by creating "sustainability and public health initiatives, using public education, community action, government oversight, and enforcement of environmental laws."  (Id. at ¶ 8.)

2

Plaintiff S.B. is a seven-year-old Philadelphian who "suffers from severe seasonal allergies" that are "directly impacted by the climate." (Id. at ¶ 9.) His allergies "have been exacerbated and will continue to worsen as climate change becomes more severe." (Id.) "For example, S.B. needed to be hospitalized during Hurricane Irene in 2011 . . . ." (Id.) S.B. "loves to play sports," and fears that "increasing temperatures and extreme weather events" will make it difficult for him to engage in outdoor activities. (Id.)

Plaintiff B.B., an eleven-year-old Chester Country resident, is "passionate about protecting the environment, and experiences anxiety" about climate change. (Id. at ¶ 10.) He "regularly takes notice of news events" concerning climate change. B.B. "experienced the frightening impact of Super Storm Sandy [in 2012] and Hurricane Irene [in 2011]." (Id.) B.B. suffers from asthma, which he believes "is exacerbated by climate change." (Id.)

## B.    Defendants' Challenged Actions

Approximately half the Amended Complaint is a recitation of domestic and international treaty provisions, studies, declarations, and administrative actions effected over the last fifty years addressing air pollution and climate change. (See id. at ¶¶ 21–138.) As alleged, "[c]limate change 'refers to changes in the totality of attributes that define climate.'" (Id. at ¶ 38.) Because of "climate change" (or "global warning"), "the United States has experienced a steady increase in extreme weather events that have destroyed American homes and businesses, displaced millions of United States citizens, and caused the tragic loss of lives." (Id. at ¶ 1.) Measured by increasing average air temperatures, climate change is caused by rising carbon emissions and the burning of coal, oil, and natural gases. (Id. at ¶¶ 23, 27–28, 43, 46–47.) As alleged, climate change causes "more frequent, extreme, and costly weather events, such as floods, hurricanes, and tornadoes," impairing human health and disproportionately affecting children. (Id. at ¶¶ 59, 61, 62, 64.)

The United States Government purportedly has known for some fifty years that climate change "presents a clear and present danger to the health and welfare of its citizens and an immediate threat to the planet." (Id. at ¶¶ 84–85; see also id. at ¶¶ 86–102.) Defendants have nonetheless acted with "reckless and deliberate indifference" to the danger of climate change by "roll[ing] back regulations and practices previously directed at addressing and minimizing the United States['] contribution to climate change." (Id. at ¶¶ 1, 3.)

Plaintiffs also challenge: (1) the President's March 16, 2017 "Budget Blueprint," proposing reduced funding for numerous agencies, including the EPA; (2) the President's March 28, 2017 Executive Order, directing agencies to review current environmental legislation; (3) Administrator Scott Pruitt's replacement of those on the EPA's Board of Scientific Counselors with individuals purportedly tied to regulated industries; and (4) various EPA, DOE, and DOI decisions to halt the work of climate change advisory boards, to alter climate change terminology on public websites, to reduce staffing at agencies with operations touching on the environment, to hire researchers with industry ties, and to leave various science-related positions unfilled. (Id. at ¶¶ 142–43, 148.)

These actions, which Plaintiffs call "the Rollbacks," have increased the Nation's contribution to climate change and "endanger[ed] the lives and welfare of United States citizens." (Id. at ¶ 4.) Climate analysts estimate that the Rollbacks "will result in a 3.4% rise in greenhouse gas emissions." (Id. at ¶ 166.) This, in turn, will "exacerbate[] the consequences of a known danger." (Id. at ¶ 170.)

As alleged, Defendants have violated: (1) Plaintiffs' Fifth Amendment due process rights; (2) Plaintiffs' Ninth Amendment rights; and (3) Defendants' duty as sovereign trustees to hold the nation's resources in public trust. (Id. at ¶¶ 172–97.) Plaintiffs ask me to declare unconstitutional any of Defendants' future actions that could aggravate climate change. (Id. at 64.)

4

Defendants argue that I should dismiss the Amended Complaint: (1) for Plaintiffs' lack of standing; (2) for failure to state a claim; and (3) as barred by the Administrative Procedure Act. (Mot. Dismiss, Doc. No. 18; Suppl. Mot. Dismiss, Doc. No. 31.)  I will dismiss on the first two alternative grounds.  I will not address the third.

## IV.    STANDING

I must dismiss Plaintiffs' Amended Complaint if I lack jurisdiction.  See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) ("Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute."); Fed. R. Civ. P. 12(b)(1).  If Plaintiffs are without standing, the Court is without jurisdiction to hear their claims. Warth v. Seldin, 422 U.S. 490, 498–99 (1975) ("The Art[icle] III judicial power exists only to redress or otherwise to protect against injury to the complaining party.").

To establish Article III standing, Plaintiffs must show that:

(1) they suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant[s], and (3) that is likely to be redressed by a favorable judicial decision.

Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016) (citing Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 180–81 (2000); Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992)).  Plaintiffs "must 'clearly . . . allege facts demonstrating' each element."  Id. at 1547 (citing Warth, 422 U.S. at 517).  Significantly, "a valid claim for relief is *not* a prerequisite for standing."  Cottrell v. Alcon Labs., 874 F.3d 154, 166 (3d Cir. 2017) (emphasis in original). Accordingly, my "standing inquiry must avoid any consideration of the merits beyond a screening for mere frivolity."  Mielo v. Steak 'n Shake Operations, Inc., 897 F.3d 467, 479 (3d Cir. 2018).

### A.  Clean Air Council

An organization has standing to bring suit on its members' behalf when:

[1] its members would otherwise have standing to sue in their own right, [2] the interests at stake are germane to the organization's purpose, and [3] neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

Friends of the Earth, 528 U.S. at 181.  CAC alleges only that it is "dedicated to protecting and defending everyone's rights to breathe clean air" and "is currently fighting for strong regulations of carbon dioxide . . . and methane at both the state and national level."  (Am. Compl. ¶ 8.) Accepting these allegations as true, they do not give rise to organizational standing.

Remarkably, the Amended Complaint includes no allegations regarding CAC's members. There is no suggestion that B.B. or S.B. belong to CAC.  Although Plaintiffs allege that Defendants' actions have harmed the environment, they do not allege how this has injured CAC's members.  See Friends of the Earth, 528 U.S. at 169 ("The relevant showing for Article III standing is not injury to the environment but injury to the plaintiff.").

Implicitly conceding the inadequacy of their allegations, in opposing the instant Motion, Plaintiffs have appended an affidavit from CAC's Director that purports to set out the harms suffered by the organization's members.  (Minott Dec., Doc. No. 28-1.)  First, "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."  Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988) (citing Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984)).  In any event, the affidavit does not include specific harms suffered by CAC members.  Rather, the Director avers only that members "are harmed by the consequences of the Rollbacks," and "reside in urban areas impacted by" flooding or heat waves.  (Id. at ¶¶ 2, 5–6.)

In these circumstances, because Plaintiffs have failed to show how CAC members would "have standing to sue in their own right," I am compelled to conclude that CAC has no standing here.  Friends of the Earth, 528 U.S. at 181.

### B.  Individual Plaintiffs

*Injury in Fact*

Plaintiffs B.B. and S.B. must demonstrate that they suffered an injury that is:

(1) "an invasion of a legally protected interest"; (2) particularized; (3) concrete; and (4) actual or imminent.

Spokeo, 136 S. Ct. at 1548 (citing Lujan, 504 U.S. at 560) ("To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"); see also Mielo, 897 F.3d at 479 n.11 ("[T]he phrase 'invasion of a legally protected interest' does constitute a distinct component of the injury in fact inquiry." (citing Gill v. Whitford, 138 S. Ct. 1916, 1929 (2018)).

*Legally Protected Interest*

This interest "may arise from the Constitution, from common law, or 'solely by virtue of statutes creating legal rights, the invasion of which creates standing.'"  Cottrell, 874 F.3d at 164 (quoting Lujan, 504 U.S. at 576–78).  Moreover, "an injury-in-fact differs from a 'legal interest'; an injury-in-fact need not be capable of sustaining a valid cause of action under applicable tort law."  Denney v. Deutsche Bank AG, 443 F.3d 253, 264 (2d Cir. 2006).  Accordingly, "aesthetic, emotional or psychological harms also suffice for standing purposes."  Id. at 265; see also Doe v. Chao, 540 U.S. 614, 634 (2004) (plaintiff had Article III standing based on the emotional distress caused by the unlawful disclosure of his social security number).

*Particularized Injury*

Claimed injuries must harm the plaintiff "in a personal and individual way."  Lujan, 504 U.S. at 560 n.1.  Defendants argue that the generalized harms alleged here "may affect Plaintiffs," but only "in the same way and to the same extent as they may affect everyone else in the world." (Mot. Dismiss. 8.)  Yet, the harms S.B. and B.B. allege are *not* the "generalized phenomena . . .

such as drought, floods, rising sea levels, reduced agricultural productivity, and fire-prone forests." (Id.)  S.B. and B.B's purported physical injuries are particularized and individual.  "The fact that an injury may be suffered by a large number of people does not of itself make that injury a nonjusticiable generalized grievance."  Massachusetts v. E.P.A., 549 U.S. 497, 522 (2007).

B.B.'s anxiety over climate change, however, is not a particularized injury.  Rather, it is the "kind of generalized grievance[] brought by concerned citizens that we have consistently held are not cognizable in the federal courts."  ASARCO Inc. v. Kadish, 490 U.S. 605, 616 (1989); see also id. ("'[T]he psychological consequence presumably produced by observation of conduct with which one disagrees,' do[es] not provide the kind of particular, direct, and concrete injury that is necessary to confer standing to sue in the federal courts." (quoting Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 485 (1982)).  B.B.'s anxiety thus does not figure in my standing analysis.

### Concrete Injury

As alleged, the physical injuries Plaintiffs suffered are real.  Spokeo, 136 S. Ct. at 1548–49 ("[Plaintiffs] could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III.").  Plaintiffs allege that they have suffered these harms because of Defendants' unconstitutional acts.  Accordingly, Plaintiffs have met the "concrete" prong of the injury in fact criteria.

### Actual or Imminent Injury

To secure a declaration that Defendants' future acts are illegal, Plaintiffs must make a "showing of any real or immediate threat that [they] will be wronged again."  City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983).  The imminence requirement thus means that "the [alleged] injury is *certainly* impending."  Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013) (citing

Whitmore v. Arkansas, 495 U.S. 149, 158 (1990)).

Plaintiffs' anticipated injuries are not imminent or certain.  They allege that the harms they have suffered "have been exacerbated and will continue to worsen as climate change becomes more severe."  (Am. Compl. ¶ 9.)  At this early stage, I must credit those allegations.  See Fowler, 578 F.3d at 210.  Accordingly, I must also accept that:  (1) Defendants are attempting to rescind regulations and statutes intended to limit levels of greenhouse gas emissions; (2) if their attempt is successful, this, in turn, will cause unnamed third parties to increase their pollution of the air; (3) this, in turn, will necessarily include increase greenhouse gas emissions; (4) this, in turn, will cause further climate change; and (5) this, in turn, will aggravate S.B. and B.B.'s allergy and asthma symptoms.  (Am. Compl. ¶¶ 9, 10, 141, 143, 166.)

Such an attenuated, contingent chain of events does not make out "certainly impending" injury.  Rather, it is at best, a less than certain prediction.  See, e.g., Clapper, 568 U.S. at 410 ("[R]eli[ance] on a highly attenuated chain of possibilities[] does not satisfy the requirement that threatened injury must be certainly impending."); Summers v. Earth Island Inst., 555 U.S. 488, 496 (2013) (rejecting standing theory based on a speculative chain of possibilities).

In these circumstances, Plaintiffs have not made out any injury in fact.

***Traceability***

Defendants argue that Plaintiffs:  (1) fail to trace their injuries directly to Defendants' actions; (2) ignore the role that third parties have played in causing such injuries; and (3) improperly aggregate "vaguely-defined categories of government actions and inactions."  (Defs.' Mem. Supp. Mot. Dismiss 10; Defs.' Mem. Supp. Suppl. Mot. Dismiss 7–10.)  I agree that Plaintiffs have not made out traceability.

Plaintiffs must establish that their alleged injuries are "fairly traceable to the challenged

conduct of the [D]efendants." <u>Spokeo</u>, 136 S. Ct. at 1547.  This requirement is distinct from that

of imminence or certainty.  "[T]he traceability prong focuses on *who* inflicted [Plaintiffs'] harm."

<u>Toll Bros., Inc. v. Twp. of Readington</u>, 555 F.3d 131, 142 (3d Cir. 2009) (emphasis in original).

Plaintiffs' injuries thus may not be "the result of the independent action of some third party not

before the court."  <u>Finkelman v. Nat'l Football League</u>, 810 F.3d 187, 193 (3d Cir. 2016).

Traceability is "'akin to 'but for' causation' in tort and may be satisfied 'even where the conduct

in question might not have been a proximate cause of the harm.'"  <u>Id.</u> (quoting <u>Edmonson v.</u>

<u>Lincoln Nat'l Life Ins. Co.</u>, 725 F.3d 406, 418 (3d Cir. 2013)).  Accordingly, "[a]n indirect causal

relationship will suffice."  <u>Toll Bros.</u>, 555 F.3d at 142 (citing <u>The Pitt News v. Fisher</u>, 215 F.3d

354, 361 (3d Cir. 2000)).

Given that Plaintiffs sustained their injuries as early as 2011, those injuries cannot be traced

to Defendants, whose challenged actions began in 2017.  (Am. Comp. ¶¶ 9–10, 140–41.)

Moreover, even as alleged, many of Defendants' challenged actions could have nothing to do with

Plaintiffs' injuries because the actions did not increase the level of greenhouse gas emissions.  For

example, Plaintiffs attack numerous personnel and budgetary decisions, including: (1) the

President's proposed Federal agency budget cuts; (2) the DOI suspending "the work of hundreds

of advisory boards"; (3) the EPA deleting its climate science website; (4) DOE eliminating the

words "clean energy" from its website; (5) the National Oceanic and Atmospheric Administration

dissolving its climate science advisory committee; (6) the EPA ending its Climate Leadership

Program; (7) the EPA reducing its staff; (8) the EPA changing its rules regarding which scientists

may serve on the Science Advisory Board; (9) replacing EPA scientists with different advisors;

(10) the failure of the Office of Science and Technology Policy to hire a director; and (11) National

Park Service advisory board members resigning because their advice was ignored.  (Am. Compl.

¶¶ 142, 148–59.)  Remarkably, Plaintiffs purport to trace their injuries to the President firing Secretary of State Rex Tillerson and replacing him with Mike Pompeo.  (Id. at ¶ 159.)

Plainly, the challenged actions have nothing to do with Plaintiffs' allergies and asthma. Plaintiffs nonetheless suggest that by aggregating these actions, they will meet the traceability requirement.  This is simply incorrect.  To find that increased emissions are "fairly traceable" to Defendants' personnel and budgetary actions, I must speculate as to what actions the Federal agencies and the fired personnel would have taken *but for* the budget cuts or firing decisions. Presumably, I must predict the actions the Department of State would have taken under Secretary Tillerson that it will not now take under Secretary Pompeo and how Plaintiff's injuries are traceable to that difference.  Indeed, Plaintiffs seek to depose former Secretary Tillerson.  (Doc. No. 44.)  This is absurd.  See Finkelman, 810 F.3d at 199 ("[U]ltimately conjectural and speculative" traceability arguments "cannot sustain Article III standing"); see also United States v. Students Challenging Regulatory Agency Procedures (SCRAP), 412 U.S. 669, 688–89 (1973) ("A plaintiff must allege that he has been or will in fact be perceptibly harmed by the challenged agency action, not that he can imagine circumstances in which he could be affected by the agency's action.").

Moreover, even as alleged, much of the challenged conduct does not contribute to greenhouse gas emissions:  (1) preventing coal companies from discharging debris into local streams; and (2) regulating power plant discharge into public waterways.  (Am. Compl. ¶¶ 141(c), (j).)  Plaintiffs have not alleged that water pollution causes climate change that, in turn, aggravates their allergy and asthma symptoms.  Once again, Plaintiffs have failed to make out traceability.

In contrast, at least facially related to climate change are Defendants' revocations or reversals of:  (1) a methane gas reporting requirement for oil and gas companies; (2) the Keystone

XL pipeline project's suspension; (3) the Outer Continental Shelf Lands Act, which banned offshore drilling in Atlantic and Alaskan waters; (4) an order requiring national parks to consider climate change when managing resources; (5) the Bureau of Land Management's public land use rule; and (6) a rule requiring consideration of climate change when altering infrastructure. (Am. Compl. ¶¶ 141(b), (d), (e), (h), (k), (l).)  Because Plaintiffs do not allege how each of these actions would increase climate change, they have again failed to make out traceability.  See Warth, 422 U.S. at 506 (no traceability where record was "devoid of the necessary allegations" to infer reasonably that absent an allegedly unconstitutional zoning practice, plaintiffs would have been able to lease or purchase the land in dispute).

In the same vein, Plaintiffs challenge the President's March 28, 2017 Executive Order:  (1) directing the EPA to review the Clean Power Plan, which limits carbon emissions for existing fossil fuel power plants; (2) revoking the policy requiring that Federal agencies avoid and minimize effects on natural resources; (3) halting agency calculation of "social cost of carbon"; and (4) directing the DOI to amend or withdraw a policy requiring an environmental review of the Federal coal leasing plan and lifting the plan's suspension.  (Am. Comp. ¶ 143.)  Again, Plaintiffs make no allegations showing causation.  Rather, it appears that they expect me to speculate as to how Plaintiffs' injuries trace back to these actions.  See Finkelman, 810 F.3d at 200 ("We can only speculate—and speculation is not enough to sustain Article III standing.").

Finally, Plaintiffs fail the traceability prong because the actions they challenge— individually and in aggregate—are, at most, indirect factors in the calculus of rising greenhouse gas emissions.  Plaintiffs simply ignore that Defendant agencies and officers *do not produce* greenhouse gases, but act to regulate those third parties that do: innumerable businesses and private industries.  The materials on which Plaintiffs rely make this clear.  For instance, Plaintiffs allege

that "the combined effects of the Rollbacks will result in a 3.4% rise in greenhouse gas emissions." (Am. Compl. ¶ 59.)   Yet, their source document for this allegation states that "[t]he Trump Administration's climate policies, *if fully implemented and not compensated by other actor*s, are projected to flatten US emissions instead of them continuing on a downward trend."   Niklas Hohne et al., <u>Action by China and India slows emissions growth, President Trump's policies likely to cause US emissions to flatten</u>, (May 15, 2017) http://climateactiontracker.org/assets/publications/ briefing_papers/CAT2017-0515Briefing_IndiaChina-USA.pdf (emphasis added).   Plaintiffs thus cannot make out traceability because they ignore that any plausible connection between Defendants' actions and increased admissions depends on the hypothetical future actions of third parties.   See <u>Toll Bros</u>, 555 F.3d at 142 ("[P]laintiff must establish that the defendant's challenged actions, and not the actions of some third party, caused the plaintiff's injury.").

In sum, as pled, Plaintiffs' injuries cannot be traced back to the Rollbacks.

### *Redressability*

Finally, I cannot adequately redress Plaintiffs' injuries.   Article III standing requires Plaintiffs to establish that it is "likely, as opposed to merely speculative, that the[ir] injur[ies] will be redressed by a favorable decision."   <u>Lujan</u>, 504 U.S. at 561 (citations omitted).   Once again, Plaintiffs ask me to redress their injuries by declaring that "Defendants cannot effectuate or promulgate any rollbacks that increase the frequency and/or intensity of the life-threatening effects of climate change based on junk science in violation of Plaintiffs' constitutional rights and the public trust doctrine."   (Am. Compl. 64.)   This relief will not redress the injuries Plaintiffs have already suffered.   See <u>New Jersey Peace Action v. Obama</u>, 379 F. App'x 217, 227 (Table) (3d Cir. 2010) (no redressability for plaintiffs seeking declaratory relief based on allegedly unconstitutional American military operations in Iraq because it could not, *inter alia*, "take back the allegedly

13

unlawful orders" already obeyed).   Moreover, because those injuries are not traceable to Defendants' challenged actions, I cannot say that the relief Plaintiffs seek will prevent Plaintiffs' future injuries.  See Lujan, 504 U.S. at 571 (no redressability where it "[wa]s entirely conjectural whether the nonagency activity that affect[ed] respondents w[ould] be altered or affected by the agency activity they s[ought] to achieve.").

***Prudential Considerations***

Finally, Article III standing requirements are based on a "concern for the proper role of the federal courts" and "[t]he idea of separation of powers."  Allen v. Wright, 468 U.S. 737, 759–60 (1984), abrogated on other grounds by Lexmark Int'l Inc. v Static Control Components, Inc., 572 U.S. 118 (2014).  Indeed, Article III standing exists "to prevent the judicial process from being used to usurp the powers of the political branches."  Clapper, 568 U.S. at 408.  These considerations preclude me from acting as a "virtually continuing monitor[] of the wisdom and soundness of Executive action."  Allen, 468 U.S. at 760 (citing Laird v. Tatum, 408 U.S. 1, 14 (1972)).

**C.  Conclusion**

In sum, because Plaintiffs are without standing, I lack jurisdiction to hear their claims and so will grant Defendants' Motion to Dismiss.

**V.      FAILURE TO STATE A CLAIM**

In the alternative, I conclude that Plaintiffs' claims are not viable because:  (1) there is no legally cognizable due process right to environmental quality; (2) the Ninth Amendment provides no substantive rights to sustain Plaintiffs' action; and (3) Plaintiffs' public trust claim has no basis in law.

### A.  Fifth Amendment Due Process Claim

Plaintiffs allege three due process violations: (1) a "violation of the fundamental right to a life-sustaining climate system"; (2) a "violation of the state-created danger doctrine"; and (3) a "violation of Plaintiffs' rights to life, liberty, and property."  (Pls.' Resp. 20.)  Plaintiffs apparently derive these due process protections from the "action [of] a consensus of nations [that] has recognized a governmental responsibility not to endanger life, including the fundamental right to a life-sustaining climate system."  (Am. Compl. ¶ 124.)  Defendants argue that there is no due process right to sustain these claims.  (Defs.' Mem. Supp. Suppl. Mot. Dismiss 21.)

***Right to a Life-Sustaining Climate System***

The Fifth Amendment's due process guarantee "include[s] a substantive component, which forbids the government to infringe [on] certain 'fundamental' liberty interests."  Reno v. Flores, 507 U.S. 292, 301–02 (1993).  Plaintiffs thus argue that that their fundamental right to a life-sustaining climate system stems is such a liberty interest.  (Am. Compl. ¶¶ 172–91; Pls.' Resp. 28–32); U.S. Const. amend. V.  I do not agree.

The Third Circuit has held that "there is no constitutional right to a pollution-free environment."  Nat'l Sea Clammers Ass'n v. City of New York, 616 F.2d 1222, 1238 (3d Cir. 1980), vacated on other grounds sub nom., Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n, 453 U.S. 1 (1981).  As of this writing, a single court has recognized a substantive due process right analogous to what Plaintiffs urge here.  See Juliana v. United States, 217 F. Supp. 3d 1224, 1248–50 (D. Or. 2016) (recognizing "the right to a climate system capable of sustaining human life").  Yet, the *Juliana* Court certainly contravened or ignored longstanding authority.  See County of Sacramento v. Lewis, 523 U.S. 833, 842 (1998) ("[W]e have always been reluctant to expand the concept of substantive due process."); Washington v. Glucksberg, 521 U.S. 702, 720–

21 (1997) ("[T]he Due Process Clause specially protects those fundamental rights and liberties which are, objectively, 'deeply rooted in this Nation's history and tradition.'" (citation omitted)); see also, e.g., Ely v. Velde, 451 F.2d 1130, 1139 (4th Cir. 1971) (no constitutional right to a healthy environment); Lake v. City of Southgate, No. 16-10251, 2017 WL 767879, at *3–4 (E.D. Mich. Feb. 28, 2017) (no fundamental right to  health or freedom from bodily harm); SF Chapter of A. Philip Randolph Inst. v. U.S. EPA, No. 07-4936, 2008 WL 859985, at *7 (N.D. Cal. Mar. 28, 2008) (no fundamental right to be free from climate change pollution); In re Agent Orange Prod. Liab. Litig., 475 F. Supp. 928, 934 (E.D.N.Y. 1979) (no "constitutional right to a healthful environment"); Fed. Emp. for Non-Smokers' Rights v. United States, 446 F. Supp. 181, 185 (D.D.C. 1978) (no constitutional right "to a clean environment"); Pinkey v. Ohio Envtl. Prot. Agency, 375 F. Supp. 305, 310 (N.D. Ohio 1974) (same); Tanner v. Armco Steel Corp., 340 F. Supp. 532, 537 (S.D. Tex. 1972) (same).

Moreover, the "right" the *Juliana* Court recognized is without apparent limit.  Although the Court stated that it wished to avoid  the "constitutionalization of all environmental claims," it did not explain how it would do so.  Id. at 1250.  Similarly, although  Plaintiffs ask me to recognize a similar constitutional right, they do not define its scope.  Given the actions they ask me to address—including altering agency web pages, approving hiring decisions, and ratifying the President's cabinet appointments—it appears that the scope of the "fundamental" right Plaintiffs invoke has no clear limit.  This, as much as anything, underscores that Plaintiffs do not seek the Court's assistance in adjudicating a legal dispute.  Rather, Plaintiffs disagreement with Defendants is a policy debate best left to the political process.  See Allen, 468 U.S. at 760 ("'A federal court . . . is not the proper forum to press' general complaints about the way in which government goes about its business." (quoting Lyons, 461 U.S. at 111–12)); United States v. Richardson, 418 U.S.

166, 192 (1974) ("It merits noting how often and how unequivocally the Court has expressed its antipathy to efforts to convert the Judiciary into an open forum for the resolution of political or ideological disputes about the performance of government.").

### State-Created Danger Claim

The state-created danger doctrine is one of two exceptions to the general rule that "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." DeShaney v. Winnebago Cty. Dep't of Soc. Servs., 489 U.S. 189, 195, 199–200 (1989) (state-created danger and prison-created danger are two exceptions to general rule). The Due Process Class is otherwise "a limitation on the State's power to act, not . . . a guarantee of certain minimal levels of safety and security." Id. at 195. The state-created danger exception imposes liability "based on discrete, grossly reckless acts committed by the state or state actors using their peculiar positions as state actors, leaving a discrete plaintiff vulnerable to foreseeable injury." Kneipp v. Tedder, 95 F.3d 1199, 1208 (3d Cir. 1996).

> To fall within the exception, Plaintiffs must establish that:
>
> (1) 'the harm ultimately caused was foreseeable and fairly direct';
> (2) a state actor acted with a degree of culpability that shocks the conscience;
> (3) a relationship between the state and the plaintiff existed such that 'the plaintiff was a foreseeable victim of the defendant's acts,' or a 'member of a discrete class of persons subjected to the potential harm brought about by the state's actions,' as opposed to a member of the public in general; and
> 4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

Bright v. Westmoreland Cty., 443 F.3d 276, 281 (3d Cir. 2006) (internal citations omitted). Plaintiffs meet none of these criteria.

First, Plaintiffs fail to allege that their injuries were foreseeable or direct. To the contrary,

as I have discussed, Plaintiffs have not plausibly made out a direct causal link between Defendants' conduct and their injuries.  Nor have Plaintiffs sufficiently alleged that Defendants should have foreseen their challenged actions would cause Plaintiffs' injuries (which, as I have discussed, were first sustained in 2011).  Indeed, given the failure to make out traceability, Plaintiffs cannot possibly make out foreseeability.  See id. at 283 n.7 ("The test also requires a direct causal relationship between the affirmative act and foreseeable harm to the plaintiff.").  Moreover, the state-created danger doctrine imposes liability only when the state has heightened obligations *to a particular* person because of the state's affirmative acts that have placed *that person* in increased danger.  See Kneipp, 95 F.3d at 1208.  Plaintiffs have not alleged that Defendants knew that their actions would increase B.B. and S.B.'s allergy and asthma symptoms.  Rather, in alleging only that Defendants could foresee that their actions created "serious risks of harm," Plaintiffs have failed to make out foreseeability.

Similarly, the relationship requirement "contemplates a degree of contact such that the plaintiff was a foreseeable victim of the defendant's acts in a tort sense." Rivas v. City of Passaic, 365 F.3d 181, 197 (3d Cir. 2004).  It thus "exclude[s] 'those instances where the state actor creates only a threat to the general population.'" Id. (quoting Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 913 (3d Cir. 1997); see also Kedra v. Schroeter, 876 F.3d 424, 447–48 (3d Cir. 2017) ("Because the state-created danger doctrine applies only where these particular special relationships exist, the victims of the state officials' acts will always be persons who either expected the officials not to injure them or justifiably relied on the officials to protect them from threats to their safety.").

Plaintiffs allege only that Defendants' control of the Federal Government "impos[es] severe limitations on Plaintiffs' freedom to act on their own behalf to secure a life-sustaining

climate system." (Am. Compl. ¶ 186.) Once again, Plaintiffs do not (and cannot) allege that Defendants could foresee that Plaintiffs *as individuals* would have been injured by the challenged actions. Rather, Plaintiffs' challenge to the current Administration's environmental policies makes out a "relationship" between Defendants and the entire population of the United States. This does not meet the relationship requirement. See Rivas, 365 F.3d at 197; Morse, 132 F.3d at 913.

Finally, it is worth noting (again) that climate change is the creation of those that pollute the air, not the Government, which seeks to regulate that pollution (evidently, to Plaintiffs' dissatisfaction). The state-created danger doctrine is thus inapplicable here.

***Substantive Due Process Claim***

"To sustain a substantive due process claim, [Plaintiffs] must show that the particular interest in question is protected by the Fourteenth Amendment and that the government's deprivation of that interest 'shocks the conscience.'" Vargas v. City of Philadelphia, 783 F.3d 962, 973 (3d Cir. 2015) (quoting Gottlieb ex rel. Calabria v. Laurel Highlands Sch. Dist., 272 F.3d 168, 172 (3d Cir. 2001)).

Plaintiffs allege that Defendants invaded their due process right to life and "personal bodily integrity" by "allowing and permitting fossil fuel production, consumption, and its associated $CO_2$ pollution." (Am. Compl. ¶ 185.) Once again third parties—not the Government—are polluting the air. As I have discussed, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." DeShaney, 489 U.S. at 197. Accordingly, Plaintiffs have failed to state a claim based on a violation of their right to life or bodily integrity.

Plaintiffs also charge that Defendants violated their due process right to property. (Pls.' Resp. 26–27.) Plaintiffs allege that the "deprivation of property due to flooding resulting from the

United States' increased contributions to climate change is akin to a taking resulting from government-caused flooding." (Id. at 27.)  Yet, Plaintiffs have not alleged that they have suffered the loss of any property.  Rather, their actual injuries are S.B. and B.B.'s aggravated asthma and allergy symptoms.  Plaintiffs thus have not stated a claim for an invasion of their due process right to property.

### Conclusion

In sum, Plaintiffs seek to distort limited doctrines into a means of litigating national policy. None of Plaintiffs' allegations regarding Defendants' violation of their fundamental due process rights makes out a cognizable claim.  I will thus grant Defendants' Motion on this alternative basis and dismiss Plaintiffs' Fifth Amendment claims ("First Cause of Action") with prejudice.  (Am. Compl. 59–62); Fed. R. Civ. P. 12(b)(6).

### B.  Plaintiffs' Ninth Amendment Claim

Plaintiffs allege that Defendants' conduct violated their "unenumerated constitutional rights secured by the Ninth Amendment."  (Am. Compl. ¶ 191.)  Yet, "[t]he Ninth Amendment does not independently provide a source of individual constitutional rights." Clayworth v. Luzerne Cty., Pa., 513 F. App'x 134, 137 (3d Cir. 2013); see also United States v. LeBeau, 985 F.2d 563 (Table), at *1 (7th Cir. 1993); Gibson v. Matthews, 926 F.2d 532, 537 (6th Cir. 1991); Strandberg v. City of Helena, 791 F.2d 744, 748 (9th Cir. 1986); Quilici v. Vill. of Morton Grove, 695 F.2d 261, 271 (7th Cir. 1982).  Accordingly, I will dismiss Plaintiffs' Ninth Amendment claim ("First Cause of Action") with prejudice.  (Am. Compl. 59–62); Fed. R. Civ. P. 12(b)(6).

### C.  Plaintiffs' Public Trust Claim

Plaintiffs argue that as the sovereign trustee of the public domain, the Federal Government has a duty to protect the land that it holds in trust for the public.  See, e.g., United States v. Beebe,

127 U.S. 338, 342 (1888) ("The public domain is held by the government as part of its trust. The government is charged with the duty, and clothed with the power, to protect it from trespass and unlawful appropriation."); United States v. CB & I Constructors, Inc., 685 F.3d 827, 836 (9th Cir. 2012) ("In the public lands context, the federal government is more akin to a trustee that holds natural resources for the benefit of present and future generations."); Davis v. Morton, 469 F.2d 593, 597 (10th Cir. 1972) ("All public lands of the United States are held by it in trust for the people of the United States.").

Under the public trust doctrine, each of the fifty states is responsible for submerged land underneath navigable waters in its territories.  See PPL Montana, LLC v. Montana, 565 U.S. 576, 603 (2012) ("[P]ublic trust doctrine . . . concerns public access to the waters above those beds for purposes of navigation, fishing, and other recreational uses."); Illinois Cent. R. Co. v. State of Illinois, 146 U.S. 387, 458 (1892) ("The title to lands under tide waters, within the realm of England, were by the common law deemed to be vested in the king as a public trust, to subserve and protect the public right to use them as common highways for commerce, trade, and intercourse."); W. Indian Co. v. Gov. of Virgin Islands, 844 F.2d 1007, 1018 (3d Cir. 1988) ("Submerged lands are thus impressed with a trust for the benefit of the public, and the sovereign's use and disposition of those lands must be consistent with that trust.").  The Parties dispute whether the public trust doctrine derives from state law or the Constitution.  (Defs.' Mem. Supp. Mot. Dismiss 16–18; Pls.' Resp. 32–35.)

Plaintiffs seek to create an entirely new doctrine—investing the Federal Government with an affirmative duty to protect all land and resources within the United States—enforceable as a substantive due process right under the Fifth and Ninth Amendments.  (Am. Compl. ¶¶ 194–97.) That doctrine applied here would empower this Court to direct any Executive Branch action related

to "the environment."  The *Juliana* Court alone has recognized this new doctrine.  See Juliana, 217 F. Supp. 3d at 1256–61.  Again, that Court's reasoning is less than persuasive.

Once again, I decline to arrogate to the Courts the authority to direct national environmental policy.  Accordingly, I will grant Defendants' Motion and dismiss Plaintiffs' public trust claim ("Second Cause of Action") on this alternative ground.  (Am. Compl. 62–63); Fed. R. Civ. P. 12(b)(6).

## VI.     CONCLUSION

Invoking *Marbury v. Madison*, Plaintiffs admonish that "[i]t is the Judiciary's duty to determine when the Executive has committed constitutional violations, and Plaintiffs allege such violations here."  (Pls.' Resp. 4.); 5 U.S. (1 Cranch) 137 (1803).  There is a difference, however, between determining the constitutionality of particular Executive action and regulating all statutory, regulatory, budgetary, personnel, and administrative Executive actions that relate to the environment.  The former is certainly within the province of the Judiciary.  The latter would make the Executive a subsidiary of the Judiciary.

I will dismiss the Amended Complaint on alternative grounds: lack of standing and failure to state a claim.  In light of my decision, I will not address Defendants' alternative contention that Plaintiffs' claims are barred by the Administrative Procedure Act.  5 U.S.C. §§ 704, 706.

An appropriate Order follows.


February 19, 2019                                                    **AND IT IS SO ORDERED.**

                                                                    */s/ Paul S. Diamond*
                                                                    _____

                                                                    Paul S. Diamond, J.